BARBOUR, Appellant, *v.* STATE BOARD OF EDUCATION
ET AL., Respondents.

(No. 6,992.)

(Submitted June 13, 1932.   Decided July 9, 1932.)

[13 Pac. (2d) 225.]

322

*Mr. E. G. Toomey,* for Appellant, submitted a brief and argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. C. N. Davidson,* Assistant Attorney General, for Respondents, submitted a brief.

*Messrs. Murphy & Whitlock* and *Mr. Howard Toole,* for Respondents, submitted a supplementary brief; *Mr. A. N. Whitlock* and *Mr. Toole* argued the cause orally.

HONORABLE LYMAN H. BENNETT, District Judge, sitting in place of MR. JUSTICE FORD, disqualified, delivered the opinion of the court.

This case is before us on an appeal by the plaintiff in the court below, Philip R. Barbour, from a judgment of dismissal entered by the district court in favor of the defendants, State Board of Education and its constituent members, that court having sustained a general demurrer to the complaint, and plaintiff having elected to stand upon the complaint.

The controversy arose out of the action of the State Board of Education setting in motion proceedings to erect certain buildings to be used for residence hall purposes upon the campus at each of the institutions, the State University at Missoula, and the Montana School of Mines at Butte. There is a somewhat casual mention made of a "student union building," but the charging portions of the complaint make no mention of any effort to proceed with that project, and we assume that it was abandoned, possibly because of a doubt in view of the terms of the statute as to the authority of the board to consummate the plan for its erection. The plan as disclosed by the complaint included the borrowing of money sufficient to complete the erection of at least the two residence halls, the security for the repayment of which is to consist in the pledging of "net revenue" from the operation of such halls when completed, together with the "net revenue,"

present and future, derived from residence halls already erected and in use.

The complaint, which prays for an injunction restraining the proceedings, alleges the adoption of a resolution by the board of education "assuming and pretending to act under and by virtue of the provisions of Chapter 94, Laws of 1929," which chapter is set out in full in the complaint, and is as follows:

"An Act to Permit the Erection and Operation of Residence Halls at State Educational Institutions.

"Be it enacted by the Legislative Assembly of the State of Montana:

"Section 1. The State Board of Education is authorized to: (a) Erect from time to time at any of the institutions under its control such residence halls as may be required for the good of the institutions. (b) Rent the rooms in such residence halls and provide board to the students, officers, guests, and employees of said institutions at such rates as will insure a reasonable excess of income over operating expenses. (c) Hold the funds derived from the operation of such residence halls and spend the same for repairs, replacements, and betterments including the erection of additional residence halls. (d) Exercise full control and complete management of such residence halls.

"Section 2. The title to all real estate and improvements acquired and erected under the provisions of this Act shall be taken and held in the name of the State of Montana.

"Section 3. In carrying out the above powers, said board may: (a) Borrow money. (b) Pledge the rents and income received from the residence halls for the discharge of loans so executed.

"Section 4. No obligation created hereunder shall ever be or become a charge against the State of Montana but all such obligations, including principal and interest, shall be payable solely: (a) From the net rents and income pledged. (b) From the net rents and income which has not been pledged for other purposes arising from any other residence halls or like

improvement under the control and management of said Board; or (c) From the income derived from gifts and bequests made to the institutions under the control of said Board for residence hall purposes.

"Section 5. In discharging obligations under the preceding sections the residence halls at each of said institutions shall be considered as a unit and the rents and income available for residence hall purposes at one institution shall not be used to discharge obligations created for residence halls at another institution.

"Section 6. No state funds shall be loaned or used for this purpose. This shall not apply to funds derived from the net rents and income of residence halls now or hereafter owned by the State of Montana."

It is alleged that that Act "is null and void and of no force and effect," and "confers no authority and authorized none of the things done or attempted to be done or initiated by such resolution."

The reasons for the claimed invalidity are set out in detail in the complaint. Upon this appeal these objections are grouped into four main classes, and we will deal with them in the same manner.

It is first contended that Chapter 94, Laws of 1929, "is a wholesale grant of legislative power."

Bearing in mind that Article XI, section 11, of the Constitution of this state, provides: "The general control and supervision of the state university * * * shall be vested in a state board of education, whose powers and duties shall be prescribed and regulated by law," we conclude that the Act falls well within the rule stated by this court in the case of *Chicago, M. & S. P. Ry. Co.* v. *Board of Railroad Commrs.*, 76 Mont. 305, 247 Pac. 162, 164. There will be found this statement of that rule: "We think the correct rule as deduced from the better authorities is that if an Act but authorizes the administrative officer or board to carry out the definitely expressed will of the legislature, although procedural directions and the things to be done are specified only in

general terms, it is not vulnerable to the criticism that it carries a delegation of legislative power."

In passing, we would say that we have examined every separate subdivision of the attacks made on the Act in question. In any instance where particular reference is omitted to the provision of the Constitution or statute which it is claimed are infringed by the Act, we have concluded that there is not sufficient merit in the contention to warrant extending this opinion by a discussion of their applicability.

Considerable emphasis is placed by the plaintiff on the proposition that the title to the Act is insufficient, in that it does not disclose the "plurality of its subjects." Obviously section 23 of Article V of the Constitution is the provision relied upon in support of this contention.

The question of the sufficiency of the title of various Acts of the legislature has been before this court many times. Each case has been decided upon its own particular set of facts. This must of necessity be the case. We advert to the divergent conclusions merely by way of indicating that no single rule can be laid down which will control all cases where this attack is made. We feel that this case does, however, fall within the rules laid down in the case of *State* v. *McKinney*, 29 Mont. 375, 1 Ann. Cas. 579, 74 Pac. 1095, 1096, where we find this language: "The title is generally sufficient if the body of the Act treats only, directly or indirectly, of the subjects mentioned in the title, and of other subjects germane thereto, or of matters in furtherance of or necessary to accomplish the general objects of the bill, as mentioned in the title.  *  *  *  The title need not contain a complete list of all matters covered by the Act."

Certainly, buildings cannot be erected without some system of financing being involved in the process, and it would seem to be clear that the procedure and the details of such a system of financing would be germane to the subject of erection and operation of residence halls. It is our conclusion, therefore, that the body of Chapter 94, Laws of 1929, "treats only, directly or indirectly, of the subject mentioned in

the title," and that the Act is not open to the attack that the title is insufficient to warrant the provisions contained in the Act. (See *Arps* v. *State Highway Commission*, 90 Mont. 152, 300 Pac. 549, and cases cited therein.)

It is next contended that "the Act violates the constitutional ▆▆ fiscal system in every important provision of such system." By way of argument upon this proposition, there is set out in plaintiff's brief considerable discussion which might be advanced in opposition to the enactment of such a bill as Chapter 94. The wisdom and policy of such legislation, and whether it should or should not have been enacted, are matters which are not for us to determine. We are limited in our consideration of this case to the legal phases and to the sole question as to the validity of the Act itself. It is true that counsel makes reference under the main subhead quoted above to the provisions or paragraphs of the complaint in which many different constitutional provisions are cited, and assertion is made that they are violated by the Act. The only provisions made reference to by the text of his brief are sections 1 and 2 of Article XIII of the Constitution. In spite of the assertion therein made that "it hardly seems necessary to argue that Chapter 94, Laws of 1929, violates" these sections, if it were not for that assertion we would not even make reference to section 1 of Article XIII, since it is so clearly not in point, in that not by the widest stretch of imagination can it be said that the Act in question constitutes a giving or loaning of the credit of the state to an individual or association in the sense that the provision is intended to operate.

Section 2 of Article XIII does present a question which we ▆▆ deem of sufficient importance to consider. A reading of this section will disclose that it has to do with the manner of the creation of debts by the legislative assembly and placing a limitation upon the amount of such debt without submitting the question to the people at a general election. At first blush this might appear to be an insurmountable obstacle to the upholding of the validity of the Act, since

it is obvious from its very terms that the Act does not contemplate that the money is now available and it makes provision for the borrowing of money for the erection of the buildings mentioned. However, we feel that the language of the supreme court of Minnesota in a case wherein they were dealing with a somewhat analogous situation is pertinent at this point: "The board proposes to finance the building of the dormitory by using the net earnings of the dormitory, the campus rentals, and the earnings of the press, and to anticipate earnings to the extent of $215,000 by undertaking to apply them as received for money now to be advanced. It is its plan to issue under a trust agreement what it terms '4½% Dormitory Serial Gold Bonds' engraved or lithographed like other bonds. Externally these writings have the appearance of bonds with which the public are familiar. Inwardly they are a pledge of the income stated and an undertaking to apply it. No debt is created. It is specified in detail and with some repetition that neither the dormitory, nor the land upon which it is built, nor other property of the university or the state, saving the income mentioned, shall be security; and no personal or debt liability rests upon the state, the board, the university, or an officer." (*Fanning* v. *University of Minnesota*, 183 Minn. 222, 236 N. W. 217, 219; see, also, *Loomis* v. *Callahan*, 196 Wis. 518, 220 N. W. 816.)

By the very terms of Chapter 94, the faith and credit of the state of Montana is not involved in the issuance of the certificates of indebtedness referred to. Neither will the taxpayers of the state ever become burdened or called upon to undertake to repay the obligations which may be created in furtherance of the plan which the resolution of the board of education contemplates. We therefore conclude without difficulty that the transaction does not, nor does the law, offend against these provisions of the Constitution.

The last group of objections are contained within the assertion that "the Act violates the statutory collection and disbursement method." In support of this it is contended that Chapter 94 violates sections 192, 194 and 196, Revised

Codes 1921. Were it not for the fact that the legislative assembly in 1931 (Chap. 157) amended sections 192 and 196, and that the amendment is subsequent to the enactment of Chapter 94, we would not give this matter any further attention. Since that is the situation, however, we feel called upon to comment to the effect that we find nothing in either of the two sections that is not entirely in harmony with the provisions of Chapter 94.

In the complaint it is asserted that the Act violates the laws of the state of Montana as adjudicated by the supreme court of the state, in that the Act attempts to set up and establish the special fund theory of financing state or quasi-state projects, whereas that theory is forbidden by the Constitution and laws, except when the special fund is created by the levy of a tax in the law creating the debt. It would seem to be sufficient to refer to a situation which has been decided by this court to be legitimate and valid, where a special fund has arisen from income derived from land dedicated to a particular purpose. (See *State ex rel. Bickford* v. *Cook,* 17 Mont. 529, 43 Pac. 928, 929.) It is universally held that in such case the future income can be used for anything which can be said to be an accomplishment of the particular purpose or the fulfillment of the trust without a violation of any of the constitutional or statutory provisions to which our attention has been called. In this connection we point out that we find nothing in conflict with our present views in *State ex rel. Diederichs* v. *State Highway Commission,* 89 Mont. 205, 296 Pac. 1033.

In addition to having made a careful examination of all the objections pointed out by the complaint and the brief on appeal, we have undertaken additional examination of a number of other matters which have occurred to us as possibly affecting the situation. Needless to say, we have not attempted to decide any other matters than those which are expressly before us, but we felt that the correct determination of those matters required this further investigation. For instance, some considerable time was spent on the question of what

constitutes a sufficient appropriation. An interesting discussion of some phases of this subject can be found in *State ex rel. Rotwitt* v. *Hickman,* 9 Mont. 370, 8 L. R. A. 403, 23 Pac. 740. We did not overlook in our consideration of this subject either the constitutional provisions cited by plaintiff or the general statutes or the specific appropriation measures adopted by the legislature which we deemed relevant.

We also studied the phases of the case involved in the question as to the powers of the state board of examiners over expenditures. In this connection we call attention to the case of *State ex rel. Schneider* v. *Cunningham,* 39 Mont. 165, 101 Pac. 962.

We have in mind the provisions of section 196, Revised Codes 1921, as it stood at the time of the enactment of Chapter 94, Laws of 1929, and as amended by Chapter 157, Laws of 1931, as they touch the powers of the board of examiners over the expenditures of the board of education of the already earned net revenue. There is nothing before us from which we can determine whether there has been a compliance with the provisions of that section. We must assume that the officers of the state have performed their duty in this regard, or will do so.

We do not deem Chapter 94, Laws of 1929, invalid upon any of the grounds urged against it or for any reason we have discovered in our investigations. It is our conclusion upon the entire case that the lower court was correct in sustaining the demurrer to the complaint and in entering its judgment of dismissal. The judgment is affirmed.

Mr. Chief Justice Callaway, Associate Justices Angstman and Matthews and Honorable Wellington H. Meigs, District Judge, sitting in place of Mr. Justice Galen, disqualified, concur.